# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**DARUS ZEHRBACH,**

**Petitioner,**

**v.**

**Civil no. 1:05-cv-79**
**Crim no. 1:00-cr-33**
**(Judge Broadwater)**

**UNITED STATES OF AMERICA,**

**Respondent.**

## OPINION/REPORT AND RECOMMENDATION

On May 11, 2005, the *pro se* petitioner, Darus Zehrbach, filed a Motion Under 28 U.S.C.

§ 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. On May 17,

2005, the undersigned determined that summary dismissal of the petition was not warranted and

the respondent was directed to file an answer.

On May 26, 2005, petitioner filed a motion to amend his § 2255 motion. That motion

was granted on May 31, 2005, and the petitioner's amended § 2255 motion was filed that same

day. Accordingly, the respondent was given an additional thirty (30) days from the date of that

Order to file its response to the amended motion. The respondent filed a response to the petition

on June 13, 2005. Petitioner filed a reply to the response on September 16, 2005.[1]

This case, pending before me for a report and recommendation pursuant to LR PL P

83.01, et seq., and an Order of Referral entered August 2, 2005, is ripe for review.

---

[1] Although the response includes a Certificate of Service stating that a copy was sent to petitioner on June 13, 2005, petitioner asserts that he never received such a copy. Petitioner also asserts that he was not aware that a response had been filed until August 31, 2005, when he received a copy of his docket sheet, and a copy of the response, from the Clerk of Court. Upon this discovery, petitioner promptly filed a reply to the response.

# I. Procedural History

## A  Conviction and Sentence

Petitioner was named in a two count indictment filed on December 6, 2000, in the Northern District of West Virginia.  Count one charged that petitioner conspired to commit mail fraud from August of 1992 through the Summer of 1996, in violation of 18 U.S.C. § 371.  Count two charged petitioner with aiding and abetting a mail fraud in violation of 18 U.S.C. § 1341.

Petitioner pleaded not guilty to the charges and proceeded to trial by jury on March 7, 2002.  Petitioner was found guilty of both counts on March 26, 2002.  On October 18, 2002, petitioner was sentenced by the Honorable Irene M. Keeley, to 51 months imprisonment and 3 years of supervised release.[2]

## B.  Direct Appeal

Petitioner filed a direct appeal of his conviction and sentence on October 25, 2002.  As grounds therefor, petitioner asserted the following:

(1) there was insufficient evidence to support the jury verdict;

(2) the district court erred by denying the defendants' motion for a new trial;

(3) the district court made evidentiary errors, the cumulative effect of which violated the right to a fair trial; and,

(4) the district court made sentencing errors.

See United States v. Zehrbach, 98 Fed.Appx. 211 (4th Cir. 2004) (unpublished).  Petitioners' conviction and sentence were affirmed on appeal May 11, 2004.  Id.

---

[2] On July 26, 2005, Judge Keeley recused herself from this case pursuant to a motion by the petitioner.  As a result, the case was transferred to the Honorable W. Craig Broadwater.

## C. Federal Habeas Corpus

### Zehrbach's Contentions

(1) the prosecutor solicited known perjury after acting in collusion to destroy or conceal exonerating evidence and to coerce witnesses with regard to

> (a) petitioners' military contracts,

> (b) petitioner's tax records, and

> (c) whether or not the victim's made "final" payments;

(2) the prosecutor and postal inspector concealed or destroyed exonerating documents and interviews with regard to

> (a) Pat Kelley's documents,

> (b) certain documents that the prosecutor informed the Court did not exist, but later produced without explanation during discovery,

> (c) the disappearance of 18 interviews conducted by the prosecution and certain documents taken from those interviewees;

(3) the prosecutor made improper statements to the court and jury, as if a witness, which she knew to be fraudulently false when she

> (a) said that the testimony of Dick Perry for the defense was "forced,"

> (b) said that she had not seen certain checks,

> (c) said Greg Moser was a newly discovered victim,

> (d) said Horton paid money to Zehrbach when he actually paid money to Larry Olson,

> (e) said the victims never cancelled their orders,

(f) said petitioner never told the victims that he was going to jail in 1995,

(g) said petitioner never did TBO testing,

(h) said petitioners' company was formed with the sole intent to defraud people,

(i) told the appeals court that the "A" section had never been planned or made,

(j) told the sentencing court that petitioner was violent,

(k) vouched for the credibility of Curt Longo, a prosecution witness,

(l) said petitioner never filed a police report for the alleged theft of his products by the victims,

(m) said that the victims complied with the terms of the contract by making all the required payments,

(n) said petitioner sold the same engines twice,

(o) said Van Grouw was ready to fly when no such evidence was introduced,

(p) said that the only engine that worked was the one for Terry Morris;

(4) petitioner was convicted using a forged or fabricated document which the prosecutor either knew was forged or participated in the forgery herself;

(5) trial exhibits were modified by the removal of key sections which the government wanted to make claims about;

(6) the prosecutor engaged in other miscellaneous misconduct to deny the petitioner a fair trial when she

(a) obtained an indictment which contained a false claim,

(b) concealed from the defense that Don Schutt was in federal prison,

(c) made it appear as if petitioner did not bring the engines to Court because he

4

could not produce them, although he was actually precluded from doing so by a ruling of the judge,

(d) told the trial judge petitioner made a false report against one of the victims,

(e) told petitioners' attorney that the victims hired a "hit man" to get petitioner, then refused to disclose more details so petitioner could protect himself,

(f) asked petitioner if he had forged any of the defense exhibits when she had absolutely no basis for such a question;

(7) the government intercepted privileged attorney client mail and other mail;

(8) newly discovered evidence of victim and government witness perjury proves that petitioner was fraudulently convicted as relates to

(a) FAA testing, certification, and documentation,

(b) the prosecution threatening Terry Morris with arrest if he testified for defense,

(c) the victims bragging about how they "pulled off" framing petitioner,

(d) five of the victims owning a competing business and putting parts stolen from petitioner on display after his conviction,

(e) witness Dick McCoon's financial motives for committing perjury,

(f) victim Fagerstrom actually receiving an engine and pictures proving it;

(9) petitioner was convicted of non-delivery of products which the victims themselves stole from him;

(10) petitioner was sentenced in conflict with sentencing law in effect in 2002 and sentence was unconstitutionally increased;

(11) petitioner is entitled to sentence relief from unconstitutional enhancements to his

sentence in keeping with Supreme Court's decision in <u>United States v. Booker</u>;

(12) the evidence for the obstruction of justice enhancement meets no burden of proof requirement;

(13) petitioner was improperly sentenced due to the failure of the United States Probation Department to verify unsubstantiated victim claims of monetary damages;[3]

(14) petitioner was fraudulently indicted by illegal activity of the grand jury because

(a) after previously failing to indict petitioner, the postal inspector shopped around for a prosecutor and new grand jury to present case to,

(b) the prosecutor engaged in various acts of misconduct during the proceedings, going so far as to tamper with the indictment by inserting a false claim;

(15) evidence indicates that the petitioner was indicted, tried, and convicted as a result of payoffs to Department of Justice (DOJ) employees as evidenced by

(a) the fact that the grand jury never heard evidence that victims pursued criminal charges only after petitioner filed a civil suit against them,

(b) the victims hired DOJ employees or family members to help create incidents to put petitioner in prison,

(c) the jury never heard testimony that the victims had a financial motive to fabricate evidence,

(d) the jury never heard evidence that the victims tried to bribe or coerce petitioners' employees into helping them steal petitioner's products,

---

[3] Grounds one through thirteen are found in petitioner's original § 2255 motion. Grounds fourteen through sixteen are found in petitioner's amended § 2255 motion.

(e) the jury never heard evidence that the victims stole from petitioner,

(f) BOP employees and their families colluded to hold petitioner in jail so the victims could steal his products and help frame him on the charges in this case,

(g) postal inspector was out to get petitioner so did not fully investigate the claims of the victims, and in fact, helped the victim's obtain petitioners' trade secrets and proprietary business information, even though the inspector knew the victims were also petitioners' competitors,

(g) prosecutor lied to court of appeals by stating that petitioner never requested an investigation or filed a police report with regard to the alleged theft of his property by the victim's and DOJ employees and their families; and,

(16) when imposing sentence, the trial judge did not meet burden of proof requirements for the various aspects or factors as required and the sentence conflicts with the Court's own Orders because

(a) the claims of Al Prinz were unsubstantiated,

(b) victim Jim Harms was dead and could not dispute fact that he was a victim,

(c) there was insufficient evidence to sustain a conviction under Count 2,

(d) there was no evidence produced as to the 380 hp and 500 hp engines,

(e) the Court sentence petitioner for eight victims, but in denying his motion for judgment of acquittal said that there was evidence of fraud as to only four victims,

(f) petitioner was charged with defrauding one victim who paid money to the wrong person and petitioner should not be held accountable for that mistake,

(g) the evidence showed that one of the victims did receive an engine.

7

Based on these alleged errors, petitioner seeks a reversal of his conviction or a sentence reduction.

**Government's Response**

(1) Grounds one through nine and fourteen and fifteen should have been raised on direct appeal and are procedurally defaulted.

(2) Grounds ten and eleven are without merit and should be denied because Blakely and Booker do not apply to this defendant.

(3) Ground twelve is not cognizable in a § 2255 proceeding, or alternately, is procedurally defaulted.

(4) Grounds thirteen and sixteen were raised on direct appeal and cannot be litigated in a § 2255 motion.

## II.  Analysis

"A petitioner collaterally attacking his sentence or conviction bears the burden of proving that his sentence or conviction was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack.  28 U.S.C. § 2255.  A motion collaterally attacking a petitioner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." Sutton v. United States of America, 2006 WL 36859 *2 (E.D.Va Jan. 4, 2006).

## A.  Procedural Default

"[A] final judgment commands respect.  For this reason, we have long and consistently affirmed that a collateral challenge may not do service for an appeal." United States v. Frady,

456 U.S. 152, 165 (1982). Therefore, the failure to raise a claim on direct appeal may result in a procedural default barring collateral review. Bousley v. United States, 523 U.S. 614 (1998).

"In order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack." United States v. Mikalajunas, 186 F.3d 490, 492-493 (4th Cir. 1999). "The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." Id. Actual prejudice is then shown by demonstrating that the error worked to petitioners' "actual and substantial disadvantage," rather than just creating a possibility of prejudice. See Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997) (quoting Murray v. Carrier, 477 U.S. 478, 494 (1986)).

"In order to demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack, a movant must show actual innocence by clear and convincing evidence." Mikalajunas,186 F.3d at 493. "Typically, to establish actual innocence, a petitioner must demonstrate actual factual innocence of the offense of conviction, i.e., that petitioner did not commit the crime of which he was convicted; this standard is not satisfied by a showing that a petitioner is legally, but not factually, innocent." Id. at 494. The petitioner must show that "it is more likely than not that no reasonable juror would have convicted him." Schlup v. Delo, 513 U.S. 298 (1995).

Here, the respondent asserts that grounds one through nine and fourteen and fifteen should have been raised on direct appeal and are now procedurally defaulted. In response,

petitioner argues that many of these claims are based on newly discovered evidence that was not previously available, and therefore, could not be raised on direct appeal.

In this Circuit, the Court utilizes a five-part test to determine whether a new trial should be granted based on newly discovered evidence. In doing so, the Court must find that: (1) the evidence is in fact newly discovered, i.e., discovered since trial; (2) diligence on the part of the movant may be inferred from the facts alleged; (3) the evidence relied on is not merely cumulative or impeaching; (4) the evidence relied on is material to the issues involved; and (5) the evidence relied on is of such a nature that on a new trial, the newly discovered evidence would probably produce an acquittal. United States v. Fulcher, 250 F.3d 244 (4th Cir. 2001) (citing United States v. Custis, 988 f.2d 1355, 1359 (4th Cir. 1989)). This test is also applied to evidence claimed to be newly discovered when put forth to support a claim of innocence or to show that a jury was subjected to improper influence. Holmes v. United States, 284 F.2d 716, 719 (4th Cir. 1960).

Ground One

In ground one, petitioner asserts various instances of prosecutorial misconduct during the grand jury proceedings and during trial. Petitioner admittedly did not raise these instances of misconduct on appeal because "all evidence and witnesses were not adequately known or located" at that time. Petition at 5. Upon a review of the record, these claims are either not newly discovered, or are without merit.

In this ground, petitioner asserts that the prosecutor solicited known perjury and/or colluded to destroy or conceal exonerating evidence about petitioners' military contracts, tax records, and whether or not the victims made final payments. However, petitioner would clearly

10

have known at trial whether testimony about his military contracts, tax records, and whether the victims made final payments was true or false and the truth of these matters should have been challenged at trial.

Moreover, the evidence petitioner raises in support of his claims that the prosecutor suborned perjury with regard to these records was clearly available to petitioner at the time of trial or on appeal. For example, in support of his claim that the prosecutor suborned perjury with regard to his military contracts, petitioner asserts that the prosecutor allowed petitioner to travel to the Middle East to service military drones during his criminal proceedings. Therefore, the prosecutor knew petitioner had military contracts and knowingly suborned perjury when she elicited testimony from a witness that suggested petitioner never had any military contracts. By petitioner's own evidence, the events leading to the alleged subordination of perjury occurred during trial and petitioner was aware of the facts in support of his claim at that time. Any information obtained after trial, i.e., the records of Pat Kelley, do not make the claim newly discovered. With or without the additional evidence, petitioner still could have raised the claim on direct appeal.[4]

With regard to petitioners' tax records, he states that "indications are that Wesley [the prosecutor] directed the IRS to search under a tax ID/number and or name different than that used pretrial in order to create a situation so that the IRS agent could state that no taxe (sic) filings were made." Petition at Ground One. Even assuming, *arguendo*, that this claim is newly

---

[4] Additionally, I note a lack of diligence on the part of the petitioner to bring forth this material at an earlier date. Petitioner certainly should have known who held evidence of his military contracts and could have contacted those people before trial, during trial, or in preparing his appeal. Further, I find that the evidence is merely impeaching and that it was or is unlikely to change the outcome of the trial.

discovered, the claim still fails as petitioner offers nothing but innuendo and supposition to support it.

Finally, with regard to his claim that the prosecutor suborned perjury when she elicited testimony from the victims that they made final payments, this instance is not newly discovered. The basis for this ground occurred at trial and was clearly known to petitioner at the time his appeal was filed. Thus, this claim should have been raised on direct appeal and is now procedurally defaulted. As noted previously in this ground, the discovery of additional evidence does not change the fact that petitioner was aware of the basis for the claim at the time his appeal was pending and that the claim could have been raised at that time.[5] Moreover, although pertinent to the charges against petitioner, the evidence is merely impeaching.

Accordingly, petitioners' evidence with regard to ground one is either not newly discovered or without merit. Thus, ground one should be denied.

Ground Two

In ground two, petitioner asserts that the prosecutor and postal inspector concealed or destroyed exonerating documents and interviews. Specifically, petitioner asserts that the prosecutor and the postal inspector destroyed documents obtained from Pat Kelley; represented to the court that certain documents did not exist; and "lost" 18 interviews and certain documents taken from those interviewees that were helpful to petitioners' defense.

---

[5] In addition, even if this instance of misconduct could be considered "newly discovered," petitioners' contention is without merit because he has failed to show that the prosecutor suborned perjury by asking these questions. To the contrary, petitioner is merely arguing semantics. Petitioner states that the payments were "progress payments," rather than "final payments," and that the prosecutor knew this. Thus, the prosecutor suborned perjury by asking the victims if they made final payments. However, this shows, at best, that the prosecutor mis-spoke or that there was some dispute as to the purpose of the payments.

12

With regard to Pat Kelley's documents, this claim is not newly discovered, and even if it is, does not entitle petitioner to relief. Petitioner conducted business with Mr. Kelley and presumably would have known that Mr. Kelley held documents that showed petitioner was engaged in military contracts. Petitioner need only have contacted Mr. Kelley and asked him to testify on his behalf. Even assuming that the prosecutor and postal inspector failed to return some of Mr. Kelley's business records, Mr. Kelley could still have testified at petitioners' trial.[6] Upon questioning, petitioner would have discovered that Mr. Kelley's records had allegedly not been returned.

Moreover, finding out after trial that the prosecutor and postal inspector allegedly failed to return some of Mr. Kelley's business records is inapposite. As evidenced by petitioner's voluminous filings, petitioner could have produced several documents, dating as far back as 1989, to show the existence of military contracts. See Amended § 2255 Motion at Exhibits to Ground One. Therefore, Mr. Kelley's documents were not essential to petitioners' defense, and even if the prosecutor did engage in the alleged misconduct, petitioner is not entitled to relief.

With regard to the documents that the prosecutor alleged did not exist, then later turned over during discovery, this claim is not newly discovered. By his own facts, the basis for this claim occurred during petitioners' criminal proceedings. Therefore, the claim was known to petitioner at trial and was available at the time of appeal. With or without any additional evidence

---

[6] Prosecutor Wesley and Postal Inspector Randolph took possession of certain business records provided by Mr. Kelley pursuant to a subpoena. Mr. Kelly provided Wesley and Randolph with his original records without retaining copies for himself. Wesley and Randolph did not index or document in any way, the exact records provided by Mr. Kelley. Mr. Kelley now claims that some of his records are missing. However, Wesley and Randolph contend that all of Mr. Kelley's records were returned to him. Mr. Kelley concedes that Wesley and Randolph returned some of his records, but not all.

discovered after trial, petitioner still could have raised the claim on direct appeal and the claim is now procedurally barred.

Finally, even assuming that petitioner's claim with regard to the 18 missing interviews is newly discovered, this claim should be denied as insufficiently pled. Although petitioner names the 18 people who were allegedly interviewed, petitioner provides no affidavits or other evidence to support his claim. Additionally, petitioner does not assert what information was obtained from those persons or how either the interviews or documentation exonerates him.

Accordingly, petitioners' evidence with regard to ground two is either not newly discovered or without merit. Thus, ground two should be denied.

Ground Three

In ground three, petitioner asserts 16 instances of prosecutorial misconduct. Petitioner admits the second instance was raised on appeal, but that the other 15 instances were not. Petitioner asserts that this court should entertain the second instance because the Court of Appeals did not specifically address it in affirming his conviction. However, petitioner provides no explanation for the failure to raise the other 15 grounds on appeal.

Because petitioner fails to allege cause and prejudice for his failure to raise 15 of the alleged instances on direct appeal, those instances are procedurally defaulted. Additionally, because petitioner does not assert that a fundamental miscarriage of justice will occur if this court does not address those claims under § 2255, those claims should be denied.

As to the second instance, that claim was raised on direct appeal. See United States v. Zehrbach, supra. On appeal, petitioner argued that the district judge erred by denying his motion for a new trial. That motion was based on the prosecutor's remarks during rebuttal that she never

found any "checks" substantiating the defendants claims of payment. Defense counsel objected and the district judge admonished the AUSA not to testify and gave a curative instruction. The district judge denied a defense motion for a new trial based on those comments, however, in doing so, the district judge recognized that the mistake was "egregious and extremely unfortunate," but that the curative instruction and admonishment were sufficient.

In denying this ground, the Court of Appeals found that the prosecutor's remarks were improper, but that the defendant could not establish that any prejudice resulted from the remarks. Therefore, even though petitioner now raises the ground as one of prosecutorial misconduct, the result is the same. The prosecutor's remarks were improper, as noted by both the district judge and the Court of Appeals. However, both the district judge and the Court of Appeals found that the remarks did not prejudice the defense. Thus, even if the comments rise to the level of prosecutorial misconduct, petitioner is entitled to no relief.

Accordingly, petitioners' evidence in support of ground three is not newly discovered or does not establish that petitioner is entitled to relief and ground three should be denied.

<u>Grounds Four - Seven and Fourteen</u>

In grounds four through seven and fourteen, petitioner concedes that these issues were not raised on direct appeal. Moreover, petitioner offers no reason for not raising them on direct appeal, other than his assertion that he planned to raise all the instances of misconduct "en mass" in a § 2255 motion. Therefore, grounds four through seven and fourteen are procedurally defaulted. Because petitioner has failed to show cause and prejudice for his default, or that a miscarriage of justice will occur if the court fails to consider these claims under § 2255, these grounds should be dismissed.

<u>Ground Eight</u>

In ground eight, petitioner asserts that post-trial newly discovered evidence shows that witnesses perjured themselves, proving that he was fraudulently convicted. In support of his claim, petitioner asserts that witnesses have come forward post-trial alleging that the "victims" have been bragging that they framed petitioner and put him out of business, that certain FAA documents on petitioners' products are now available, and that the victims have put petitioners' goods on display since his conviction.

The FAA documentation provided by petitioner suggests that certain engines built by his company were tested and found to be operational. This information appears to contradict the testimony of five of the victims. However, according to petitioners' statements, these engines were built prior to his criminal trial. Therefore, petitioner could have had these engines tested prior to trial and used that information to contradict the testimony of the government's witnesses at that time. Waiting until 2005 to test engines that could have helped his defense shows a complete lack of diligence. Moreover, the evidence does not prove that the witnesses perjured themselves. The evidence is merely impeaching. Accordingly, this claim is either not newly discovered or without merit and should be denied.

Petitioner asserts that Terry Morris was threatened with arrest to prevent him from testifying as to how well the petitioner's engines really worked. However, this argument is insufficiently pled and/or lacks merit. With regard to this claim, petitioner provides no affidavits, declarations, or other evidence to support his claim. Moreover, petitioner admits that despite similar threats, Mr. Morris testified favorably at petitioners' grand jury hearing. The failure to call Morris as a defense witness at trial was not the fault of the prosecution. Petitioner

merely had to subpoena Mr. Morris to testify. There is no evidence in petitioners' criminal case record to show or even suggest that Mr. Morris failed to appear.

With regard to petitioners' claim that the victims have since bragged about framing him, this claim is insufficiently pled. Petitioner provides no affidavits, declarations, or other evidence to support his claim. Therefore, petitioner has failed to show by a preponderance of the evidence that he is entitled to relief and this claim should be dismissed.

With regard to his claim that government witness Dick McCoon committed perjury and/or concealed evidence, petitioner asserts that he discovered in March of 2005 that this government witness is a business partner of five of the victims and had a financial motive to commit perjury. However, even assuming that the evidence to support this claim is "newly discovered,"[7] this claim is without merit. Simply because Mr. McCoon had an interest in a competing company does not prove that Mr. McCoon committed perjury, it merely calls into question his motives for testifying. Accordingly, this claim should be denied.

Finally, in support of ground eight, petitioner asserts that victim Fagerstrom did receive an engine and concealed this fact from the jury. Petitioner asserts that he now has pictures proving that Fagerstrom lied on the witness stand. Petitioner asserts that the pictures show one of his engines fitted into Fagerstrom's express aircraft. However, the pictures submitted by petitioner are not authenticated, not dated, and fail to show by a preponderance of the evidence that Fagerstrom perjured himself at trial. Accordingly, this claim should be denied.

Petitioners' claims in support of ground eight are not newly discovered, are without merit, or fail to show that he is entitled to relief. Therefore, ground eight should be denied.

---

[7] Interestingly, the petitioner argues that the prosecution either knew this or should known this at trial. It follows then, that a diligent defendant should have discovered this information at trial too.

<u>Ground Nine</u>

In ground nine, petitioner asserts that he was convicted of the non delivery of products which the victims themselves stole from him. In support of this claim, petitioner alleges that the district judge erred in excluding several pieces of evidence from the jury that showed that the "victims" stole petitioners' products and that they had motive for framing petitioner for this crime. Based on these allegations, I find that this ground is really a challenge to the evidentiary findings of the district judge.

However, on direct appeal, petitioner made a general argument that the district judge's evidentiary rulings were an abuse of discretion that in cumulation, violated his right to a fair trial. In addressing this issue, the Court of Appeals found that even if petitioner could make a "combined effect" argument, petitioner had failed to show that his right to a fair trial was violated by the district judge's evidentiary rulings. In fact, the Court of Appeals specifically stated that it had reviewed each of the defendants' objections to the district judge's evidentiary rulings and that none alone justified reversal. Thus, the "cumulative effect" of the court's evidentiary rulings could not be prejudicial.

It is quite clear from the record of petitioners' appeal proceedings that the essence of ground nine was known by petitioner at the time his direct appeal was filed. In fact, the essence of ground nine has already been decided by the Court of Appeals. Because any "newly discovered evidence" is merely incidental, and because the Court of Appeals has already determined that the basis for ground nine is without merit, ground nine should be denied.

<u>Ground Fifteen</u>

In this ground, petitioner asserts that he was indicted, tried, and convicted as a result of

18

payoffs to DOJ employees. Assuming, *arguendo*, that this claim is newly discovered, the claim still fails as petitioner offers nothing but innuendo and supposition to support this claim.

**B. Blakely/Booker Arguments**

In Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." In June of 2004, the Supreme Court applied this ruling to the State of Washington's sentencing scheme and found that the imposition of state sentencing enhancements - based solely on factual findings by the court - violated a defendant's Sixth Amendment rights because the facts supporting the findings were neither admitted by the defendant nor found by a jury. See Blakely v. Washington, 542 U.S. 296, 301-303 (2004). In addition, the Court expressly noted that it was not considering the constitutionality of the federal sentencing guidelines. Id. at 305, n 9. Subsequently, however, the Supreme Court took up this issue in United States v. Booker, 543 U.S. 220 (2005).

In Booker, the Supreme Court held that Blakely applies to the federal sentencing guidelines, and therefore, the Sixth Amendment is violated when a district court imposes a mandatory sentence under the Guidelines that is greater than the maximum authorized by the facts found by the jury alone. Booker, 543 U.S. at 243. Additionally, the Court held that two provisions of the statute creating the guidelines system must be excised to make them compatible with the Sixth Amendment, thereby rendering the guidelines advisory. Id. at 258-261.

In ground ten, petitioner asserts that pursuant to Jones v. United States, 526 U.S. 227 (1999), Apprendi v. New Jersey, supra, Ring v. Arizona, 536 U.S. 584 (2002), and Harris v.

19

United States, 536 U.S. 545 (2002), his sentence was unconstitutionally enhanced when the sentencing judge determined the amount of the fraud, the number of persons defrauded, and whether or not an obstruction of justice charge was justified. However, this claim was available to petitioner at the time of sentencing and on direct appeal.[8] Because petitioner failed to raise this claim at the appropriate time, this claim is procedurally defaulted and cannot be raised for the first time in a § 2255 motion.

Additionally, in grounds ten and eleven, petitioner argues that Booker, as an extension of the Supreme Court's prior cases, entitles him to relief from an unconstitutionally enhanced sentence. However, this claim is foreclosed by the Fourth Circuit's decision in United States v. Morris, 429 F.3d 65 (4th Cir. 2005). In Morris, the Fourth Circuit found that Booker has not been made retroactively applicable to cases on collateral review. Morris at 72. Thus, Booker is inapplicable to cases that became final prior to the issuance of the Supreme Court's decision in those cases. Id.

Here, petitioners' conviction was affirmed on appeal on May 11, 2004. There is no evidence to suggest that petitioner filed a petition for writ of certiorari with the United States Supreme Court so his conviction and sentence became final when the time for doing so - 90 days - had elapsed. Thus, petitioners' sentence became final on August 9, 2004. Booker was decided on January 12, 2005. Accordingly, Booker is not available to petitioner on collateral review.

## C. Sentencing Issues

In ground twelve, petitioner asserts that he was given an enhancement for obstruction of

---

[8] Petitioner was sentenced on October 18, 2002, and his direct appeal was pending from October 25, 2002, to May 11, 2004. The Supreme Court issued its decision in Jones in 1999, its decision in Apprendi in 2000, and its decisions in Ring and Harris in June of 2002.

justice. Petitioner asserts that this enhancement was the result of a finding by the district judge that some of the victims did not get certain documents in the mail. The prosecutor alleged that because the documents were not received, they must not have been sent and/or that they were fabricated. However, other than the prosecutor's unsupported assertion, no evidence was presented to sustain this charge. Therefore, petitioner alleges that this enhancement was not proved beyond a reasonable doubt and should not have been considered at sentencing.

A review of the file in this case shows that this ground was not raised on direct review. Petitioner does not allege cause and prejudice for his default or that a miscarriage of justice will result if the court refuses to entertain this claim on collateral review. See Mikalajunas,186 F.3d at 492-493. As previously noted, to demonstrate that a miscarriage of justice will occur, the defendant must show by clear and convincing evidence that he is actually innocent. Id. at 493. "'Actual innocence' means factual innocence, not mere legal insufficiency." Bousley v. United States, 532 U.S. at 623.

Because petitioner fails to make the requisite showing, ground twelve is procedurally defaulted and cannot be raised for the first time in a § 2255 motion.

## D. Issues Raised on Direct Appeal

Grounds thirteen and sixteen were raised on direct appeal. Petitioners' conviction and sentence were affirmed. Because a federal court is not required to second-guess itself, a claim decided on direct review cannot ordinarily be relitigated in a § 2255 proceeding unless the petitioner can show an intervening change in the law. Davis v. United States, 417 U.S. 333 (1974); Boeckenhaupt v. United States, 537 F. 2d 1182 (4th Cir. 1976).

In ground thirteen, petitioner asserts that the United States Probation Office failed to

properly verify or confirm the victims claims for monetary damages. Ground sixteen amounts to a claim that there was insufficient evidence to convict him of certain aspects of Count one and of Count two. Petitioner asserts no intervening change in the law that would require the Court to reconsider these issues under § 2255. Therefore, grounds thirteen and sixteen should be denied.

### III.  Conclusion

For the reasons set forth in this opinion, the undersigned recommends that the Court enter an Order **DENYING** petitioner's § 2255 motion and **DISMISSING** the case with prejudice. In light of this recommendation, the undersigned also recommends that the Court deny petitioner's:

- Motion for Judgment on Pleadings (Doc. 225)

- Motion for Summary Judgment (Doc. 226)

- Second Motion for Judgment of Pleadings (Doc. 228)

- Second Motion for Partial Summary Judgment (Doc. 230)

- Third Motion for Judgment on Pleadings (Doc. 235)

- Motion for Partial Summary Judgment (Doc. 238)

- Motion for Correction of Illegal Sentence (Doc. 239)[9]

Any party may file within ten (10) days after being served with a copy of this Recommendation with the Clerk of the Court written objections identifying the portions of the Recommendation to which objections are  made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable W. Craig Broadwater, United States District Judge. Failure to timely file objections to the Recommendation set forth above will

---

[9] This motion is merely a reiteration of the claims raised in petitioner's § 2255 motion and should be denied for the same reasons stated in this opinion.

22

result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation.[10]

The Clerk is directed to provide a copy of this Report and Recommendation to the *pro se* petitioner and any counsel of record.

DATED: March 23, 2006

/s *John S. Kaull*
MAGISTRATE JUDGE

---

[10] 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).